## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| A.K., by and through her parent C.K., et al., | |
| *Plaintiffs,* | CIVIL ACTION |
| v. | NO. 25-294 |
| COUNCIL ROCK SCHOOL DISTRICT, et al., | |
| *Defendants.* | |

**Pappert, J.**                                                          **April 17, 2025**

## MEMORANDUM

The Individuals with Disabilities Education Act offers states federal funding to help provide a free appropriate public education to children with disabilities.  To be eligible for funds, states must comply with a variety of statutory requirements.  One requirement provides that a FAPE must be "available to all children with disabilities residing in the State between the ages of 3 and 21, inclusive," unless this requirement "would be inconsistent with State law or practice . . . respecting the provision of public education" to children "aged 3 through 5 and 18 through 21."  20 U.S.C. § 1412(a)(1).

The Plaintiffs — four students who qualify as children with disabilities under the IDEA, and their parents — sued Council Rock and Central Bucks School Districts, where the students attend school.  Plaintiffs claim that Pennsylvania provides "public education" that, under § 1412(a)(1), entitles the students to receive a FAPE from the Districts until they turn twenty-two.  Nonetheless, they allege, the Districts have threatened to terminate their FAPEs at the end of the school years in which they turn twenty-one.  Council Rock and Central Bucks move to dismiss the Complaint for lack of subject-matter jurisdiction, arguing that Plaintiffs' claims are not ripe, are barred by

the *Rooker-Feldman* doctrine and were not first exhausted in administrative proceedings.  The Districts also argue that Plaintiffs failed to state a claim.

The Court grants both motions.  Although neither *Rooker-Feldman* nor the exhaustion requirement apply, no Plaintiff has alleged an injury-in-fact that supports Article III standing or shown that their claim is ripe.  The Court lacks subject-matter jurisdiction and dismisses the Complaint without prejudice.

I

A

The IDEA is intended to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living."  20 U.S.C. § 1400(d)(1)(A).  To that end, the law provides federal funds to states that satisfy its requirements concerning the provision of a FAPE to children with disabilities.  *Id.* § 1412.  One such requirement is that a FAPE be "available to all children with disabilities residing in the State between the ages of 3 and 21, inclusive."  *Id.* § 1412(a)(1)(A).  However, this requirement does not apply to children between three and five years old, and between eighteen and twenty-one years old, if "its application to those children would be inconsistent with State law or practice . . . respecting the provision of public education to children in those age ranges."  *Id.* § 1412(a)(1)(B)(i).

To demonstrate their funding eligibility, states must annually provide to the federal Secretary of Education plans reflecting the implementation of "policies and procedures" that satisfy the IDEA.  *Id.* § 1412(a).  State educational agencies (SEAs),

2

which include state boards and departments of education, *see id.* § 1401(32), are charged with enacting such policies and submitting these plans, *id.* § 1412(a)(11). SEAs are also responsible for disbursing money to local educational agencies, which are eligible for federal funds if they submit plans to the SEA that are, *inter alia*, "consistent with" the state's IDEA-compliant policies and procedures. *Id.* § 1413(a).

The Pennsylvania Department of Education adopted the federal regulations implementing the IDEA. 22 Pa. Code § 14.102(a); *Pa. Sch. Bds. Ass'n v. Mumin*, 317 A.3d 1077, 1085 (Pa. Commw. Ct. 2024). Those regulations, *inter alia*, restate the IDEA's requirement that funding recipients provide a FAPE to children between the ages of three and twenty-one, 34 C.F.R. § 300.101, the exception to that requirement for children of a certain age, *id.* § 300.102, and the submission requirements for SEAs and LEAs, *id.* §§ 300.100, 300.200. To help ensure that LEAs are meeting state and federal standards for the education of children with disabilities, the Department created a Model Policy to distribute to LEAs. *Mumin*, 317 A.3d at 1085–86. The Department deems an LEA's acceptance and adoption of the Model Policy to, in part, fulfill the requirement of 20 U.S.C. § 1413(a) and 34 C.F.R. § 300.200. *Id.* at 1086.[1]

Until 2023, the Model Policy stated that "[Pennsylvania] is required to make [a] FAPE available to a child with a disability to the end of the school term in which the student reaches his/her 21st birthday." *Mumin*, 317 A.3d at 1087 (citation omitted) (alterations in original) (hereinafter, the "Old Policy"). In August of 2023, pursuant to a class action settlement, the Department agreed to rewrite the Model Policy to require

---

[1] The Department's current Model Policy is available online. Commonwealth of Pa. Dep't of Ed., *Individs. with Disabilities Ed. Act Part B Policies and Procedures under 34 CFR §§ 300.101–300.176*, (Rev. Aug. 30, 2023), https://www.pa.gov/content/dam/copapwp-pagov/en/education/documents/instruction/special-education/ideia-idea/ideab.pdf.

that children with disabilities be provided a FAPE until their twenty-second birthday. *Mumin*, 317 A.3d at 1088 (hereinafter, the "New Policy").

Shortly thereafter, the Pennsylvania Association of School Boards and several individual school districts, including Central Bucks School District, sued the Department, claiming that the New Policy "illegally requires Pennsylvania LEAs to provide a FAPE until a student's 22nd birthday" and that the Department's promulgation of the New Policy was improper as a matter of state administrative law. *Id.* at 1090. On May 16, 2024, the Commonwealth Court held that because the Department failed to promulgate the New Policy in the manner proscribed by state law, the New Policy was void *ab initio*. *Id.* at 1106.

The Department then appealed the Commonwealth Court's decision to the Pennsylvania Supreme Court, *see* (Docket Sheet, *Pa. Sch. Bds. Ass'n v. Mumin*, 39 MAP 2024 (Pa.)), resulting in an automatic *supersedeas*, *see* Pa. R. App. P. 1736. Central Bucks filed a petition for relief from the *supersedeas* with the Commonwealth Court in July of 2024, which is still pending. (Docket Sheet, *Pa. Sch. Bds. Ass'n v. Mumin*, 409 MD 2023 (Pa. Commw. Ct.) at 14). In November of 2024, the Pennsylvania Supreme Court granted oral argument on three questions. (Oral Argument Order, ECF No. 8-2.) And in March of 2025, the Department published a notice inviting public comment on revisions to the state plan and Model Policy to bring them into compliance with the Department's interpretation of state and federal law. 55 Pa. Bull. 2280–81 (March 22, 2025). That revision would "extend FAPE to students with disabilities until their 22nd birthday, rather than ending services at the conclusion of the school term in which they turn 21 years of age." *Id.*

B

In January of this year, Plaintiffs — two students who attend high school within Council Rock School District, two who attend high school within Central Bucks School District, and the students' parents — filed this lawsuit against their respective school districts. (Compl., ECF No. 1.)[2] The Plaintiffs allege that the Districts "adopted a policy" of terminating students' FAPE at the end of the school year in which the students turn twenty-one, "attempted to cut off" services for A.K. and B.J. in accordance with that policy, and "publicly and repeatedly" restated their position on the IDEA's requirements. (*Id.* ¶ 6.) Plaintiffs further allege that the Districts' policy violates the IDEA and that their "actions will deprive Plaintiffs of up to a year of a FAPE at a critical juncture of their lives," thereby causing "severe, irreparable harm." (*Id.* ¶¶ 6–8, 13.)

All four Student-Plaintiffs have been diagnosed with autism spectrum disorder and other intellectual or learning disabilities. (*Id.* ¶¶ 69, 80, 86, 99.) They attend specialized programs within the Districts that provide vocational training as well as academic and life skills instruction aimed at helping students successfully transition to post-school life. (*Id.* ¶¶ 70, 80, 87, 99.)

---

[2]     Rule 10(a) provides that "[t]he title of the complaint must name *all* the parties[.]" Fed. R. Civ. P. 10(a) (emphasis added). Yet here, the Complaint's caption names *only* the children, while the body of the Complaint names both the children and their parents as parties. *Compare* (Compl. p. 1), *with, e.g.*, (*id.* ¶¶ 17, 21, 25, 29). The Court could therefore ignore any alleged plaintiff not named in the caption. *See Abraugh v. Altimus*, 26 F.4th 298, 303 (5th Cir. 2022). However, because "the Complaint provided Defendants adequate notice that the parents were asserting their own rights in addition to those of their children, Plaintiffs' claims involving the rights of the parents are properly before us." *Kanuszewski v. Michigan Dep't of Health and Human Servs.*, 927 F.3d 396, 406 n.4 (6th Cir. 2019) ("Errors in captions are common and need not be viewed as fatal defects. . . . Our touchstone is adequate notice, and the Federal Rules of Civil Procedure evidence a clear preference to resolve disputes on their merits.") (cleaned up).

A.K. attends a program in Council Rock and will turn twenty-two in May of this year. (*Id.* ¶¶ 70–71.) Plaintiffs allege that after the Commonwealth Court released its *Mumin* decision in May of 2024, Council Rock emailed A.K.'s mother, C.K., to notify her that the decision "requires that your child graduate at the conclusion of the current school term." (*Id.* ¶ 72.) After the decision was stayed on appeal, Council Rock allegedly sent C.K. another email, this time notifying her of the stay and stating that the school district "will be working to ensure that your children will continue to receive services through this time of uncertainty." (*Id.* ¶ 74.) Plaintiffs state that if A.K. is "age[d] out" of the program before she turns twenty-two, she "will experience disruption and regression that will significantly impede her future." (*Id.* ¶ 77.) They further maintain that both A.K. and her mother have been "left . . . in a state of precarity and instability," with the uncertainty about A.K.'s FAPE eligibility "mak[ing] it extremely difficult for A.K. to prepare for the transition and for C.K. to determine when alternative supports and services need to be in place." (*Id.* ¶ 78.)

V.S., also at Council Rock, will turn twenty-one in August of this year. (*Id.* ¶¶ 80–81.) Council Rock allegedly told S.S., V.S.'s parent, that her services "may be terminated" after the current school year finishes. (*Id.* ¶ 82.) Plaintiffs allege the "uncertainty" of V.S.'s continued education at Council Rock has "made it extremely difficult for S.S. to plan for V.S.'s next steps and to explain to V.S. what the future holds for her" and that S.S. "is becoming increasingly concerned about how to help V.S. prepare for a sudden disruption" in support. (*Id.* ¶ 84.)

B.J. attends a program in Central Bucks and will turn twenty-two in June of this year. (*Id.* ¶¶ 87–88.) According to Plaintiffs, in March of 2024, B.J.'s Individualized

Education Program ("IEP") team "agreed that [he] would remain [in Central Bucks] until the end of the 2024-2025 school year," but two months later, the school district emailed his parent, J.J., to say that the *Mumin* decision "requires that your child graduate at the conclusion of the current school year." (*Id.* ¶ 89–90.) Then, several days later, J.J. received another email from Central Bucks, stating that the stay "may allow" the Department to enforce the New Policy and that B.J. "will not be exited from special education services at the conclusion of the 2023-2024 school term as previously communicated." (*Id.* ¶ 91.) In support of the allegation that Central Bucks intends to resume the Old Policy as soon as possible, Plaintiffs highlight Central Bucks's application for relief of the stay, which represented that absent relief, students could "enter the 2024-25 school year with no idea of when their special education services may end." (*Id.* ¶ 95.) And Plaintiffs explain that B.J. "is still on the waitlist" for appropriate adult day programs and that his reliance on the Central Bucks team "to help him gradually transition" to such a program means that being "forced to exit Central Bucks without any advance warning or preparation" would likely result in his being "homebound and isolated." (*Id.* ¶ 97.)

C.B., also at Central Bucks, will turn twenty-two in March of 2028, so under the Old Policy, her services will be terminated following the 2026-2027 school year. (*Id.* ¶¶ 99–101.) L.B., C.B.'s parent, believes that the support she would receive "over the next three years [is] essential to her post-school success" and is worried that if Central Bucks terminates C.B.'s services "before she is ready, . . . she will experience significant regression, isolation, and depression." (*Id.* ¶ 102.) Plaintiffs further note that L.B. "needs time" to identify future support services for C.B. but because of the uncertainty

surrounding the duration of her FAPE, does not know when those supports will need to be in place.  (*Id.* ¶ 103.)

## II

The Districts moved to dismiss the Complaint for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6).  Because the Districts filed their motions attacking subject-matter jurisdiction before answering the complaint or otherwise presenting competing facts, their motions are a facial, not factual, attack.  *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (2014).  A facial attack "considers the claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court."  *Id.*  In other words, a facial attack "contests the sufficiency of the pleadings," and the court applies the same standard of review used for considering a Rule 12(b)(6) motion.  *Id.* (citation omitted).  The plaintiff "must assert facts that affirmatively and plausibly suggest that the pleader has the right" to jurisdiction, but in evaluating those assertions the Court must, as it would in the Rule 12(b)(6) context, "accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party."  *In re Schering Plough Corp. Intron*, 678 F.3d 235, 243–44 (3d Cir. 2012) (citations omitted).  A court deciding a 12(b)(6) motion may consider only the complaint, exhibits attached thereto, matters of public record and "undisputedly authentic documents" on which the claims are based.  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  The same limits apply to a facial attack under Rule 12(b)(1).  *See Giovanni v. U.S. Dep't of the Navy*, 433 F. Supp. 3d 736, 741 (E.D. Pa. 2020).

III

Before considering the merits of a suit, the Court must determine whether the action constitutes a case or controversy under Article III of the Constitution. *See Wayne Land and Mineral Grp., LLC v. Delaware River Basin Comm'n*, 959 F.3d 569, 573–74 (3d Cir. 2020). The case-or-controversy requirement is enforced via several doctrines, including standing and ripeness. *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 539 (3d Cir. 2017). Standing and ripeness, while not identical doctrines, often overlap in many respects. *See, e.g.*, *Presbytery of New Jersey Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1462 (3d Cir. 1994) ("[I]t is of course true that if no injury has occurred, the plaintiff can be told either that *she* cannot sue, or that she cannot sue *yet*.") (citation omitted).

Although the parties' briefing focused solely on the Third Circuit's unique test for ripeness in the declaratory judgment context, the Court will first address standing. *Cf. Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press."); *Free Speech Coalition, Inc. v. Att'y General*, 825 F.3d 149, 167 n.15 (3d Cir. 2016) (finding ripeness satisfied where standing was met because in that case both issues "turn on whether the threat of future harm . . . is sufficiently immediate"); *Aichele*, 757 F.3d at 368 n.25 (holding that ripeness was satisfied for the reasons discussed in the standing analysis).

A

For a plaintiff to have Article III standing, she "must establish three elements: (1) an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely redressed by a favorable judicial decision." *Yaw v. Del. River Basin Comm'n*, 49 F.4th 302, 310–11 (3d Cir. 2022). The burden of establishing standing rests with the plaintiff, who must "clearly allege facts demonstrating each element." *Id.* at 311 (cleaned up).[3]

1

To satisfy the injury-in-fact requirement of Article III, plaintiffs must allege an injury that is "concrete and particularized" as well as "actual or imminent, not conjectural or hypothetical." *Id.* (citations omitted). When plaintiffs request prospective relief "in the form of a declaratory judgment or an injunction, they must show that they are likely to suffer from a future injury" that is *imminent* — that is, the injury "is certainly impending rather than just merely possible." *Id.* at 318 (cleaned up); *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) ("Allegations of possible future injury do not satisfy the requirements of Art[icle] III."). The harm need not be "literally certain," meaning a "substantial risk" of injury can suffice. *See Clapper v. Amnesty Int'l*, 568 U.S. 398, 414 n.5 (2013). But an alleged future harm that relies upon a "'chain of contingencies' amounting to 'mere speculation'" will not support Article III standing. *Aichele*, 757 F.3d at 364 (quoting *Clapper*, 568 U.S. at 410); *see also Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 893 (3d Cir. 2020) ("Thorne posits only

---

[3]    Insofar as the Third Circuit has created a distinct declaratory-judgment standing test, that test has "often [been] framed . . . as part of the injury-in-fact analysis," *Aichele*, 757 F.3d at 365 n.22, and is, for the reasons discussed below, not satisfied here.

an infinitesimal increase in her chances of being injured . . . so any risk of harm . . . is no more than speculative.").

Plaintiffs can also base prospective relief on past exposure to illegal conduct, so long as they allege current negative effects flowing from that past exposure. *See Yaw*, 49 F.4th at 319; *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). Past injury can also be used to predict future injury. *Murthy v. Missouri*, 603 U.S. 43, 59 (2024) (citing *O'Shea*, 414 U.S. at 495–96). But a plaintiff does not have standing simply because she has expended funds in response to, or expressed fear of, a future harm that is not itself imminent. *See Clapper*, 568 U.S. at 416; *Aichele*, 757 F.3d at 364 & n.21.

Here, Plaintiffs request forward-looking relief in the form of both a declaratory judgment and a permanent injunction. (Compl. ¶ 9.) To support this request, they allege a single harm: the possibility that the Student-Plaintiffs will be denied a FAPE to which they are legally entitled. (Compl. ¶¶ 6–7, 13, 110; Pl. Resp. in Opp. to Mot. to Dismiss at 2, 18, ECF No. 14.).[4]

a

A.K. and B.J. will turn twenty-two in May and June, respectively. Because of the *supersedeas*, they are not currently being denied a FAPE, and under their own interpretation of the IDEA, are not entitled to services beyond their twenty-second birthdays. Thus, for A.K., C.K., B.J. and J.J.'s alleged future injury — the denial of a

---

[4]    The Plaintiffs also allege the students' programs are crucial to successful post-school transitions, without which they will regress, (Compl. ¶¶ 77, 83, 97, 102), and that the Districts' policy has created uncertainty that makes it difficult for their parents to prepare them for the future and plan their next steps, (*id.* ¶¶78, 84, 102–03). Insofar as Plaintiffs contend that these allegations constitute current harms based on their fear of the future loss of a FAPE, *see* (Pl. Resp. in Opp. to Mot. to Dismiss at 2, 6), they must still demonstrate that this alleged future harm is imminent. The Court's analysis thus focuses on that alleged future harm.

FAPE before A.K. and B.J.'s twenty-second birthdays — to be imminent, they must at least allege facts that support the conclusion that the Pennsylvania Supreme Court is likely to affirm the Commonwealth Court's decision before their next birthdays. They have not done so, nor could they. Oral argument was granted in November but has not yet been held, nor has the date even been set despite the release of argument calendars for April and May.[5] And although Central Bucks petitioned the Commonwealth Court for relief from the *supersedeas* in July of 2024, B.J. and J.J. allege no facts from which the Court could infer that the petition would likely be granted, let alone that it would be granted before B.J.'s next birthday. In sum, because the risk of future harm turns on "pure speculation," these four plaintiffs have not alleged an injury that satisfies the actual-or-imminent requirement.

C.B. and L.B. also fail to satisfy the imminency requirement. C.B. does not turn twenty-two until March of 2028. Thus, a state supreme court decision adverse to C.B. would not result in the denial of the FAPE to which she alleges she is entitled for at least two more years. While L.B. understandably prefers to know the maximum duration of C.B.'s FAPE as soon as possible and "believes that the comprehensive services and supports C.B. receives . . . over the next three years are essential to her post-school success," (Compl. ¶ 102), the possibility that C.B. will be denied a necessary FAPE two years from now is too speculative and remote to satisfy the actual-or-

---

[5]    The state supreme court calendar is available online. Unified Jud. Sys. of Pa., *Calendar*, https://www.pacourts.us/courts/supreme-court/calendar (last visited April 17, 2025) (providing links to PDFs of daily argument lists). Argument does not appear to be scheduled again until September. *See id.* Although the court can add arguments, *id.*, Plaintiffs do not allege, or even speculate, that the court will do so in this case.

imminent requirement, *see* (*id.* (alleging L.B. is worried about what will happen "*if*" Central Bucks terminates services "*before* C.B. is ready") (emphasis added).[6]

b

V.S., who turns twenty-one in August, appears at first glance to present a more compelling case for imminent injury.  Under the Old Policy, V.S.'s services would be terminated at the end of the current school year, but under the New Policy — the one currently in force due to the *supersedeas* — they would continue throughout the upcoming 2025-26 school year.  In contrast to the other Student-Plaintiffs, it is fathomable that the state supreme court will release its decision in *Mumin* during that time, *i.e.*, a time when V.S. alleges she is entitled to services, which would immediately bring about the future harm she alleges in this suit.  V.S. thus appears to be at greater risk than the other Student-Plaintiffs, though the speculative nature of this risk could still be fatal to V.S.'s standing.  And the more-likely timeline ultimately raises a more

---

[6]    The Plaintiffs do not clearly argue that their "uncertainty" harms are the ongoing effects of past illegal conduct.  And it might be difficult for them to argue that they experienced past illegal conduct.  They do not allege that the Student-Plaintiffs were ever denied the FAPE to which Plaintiffs allege they are entitled.  They do, however, allege that the Districts attempted to age-out A.K. and B.J. in 2024.  And their briefing points to the IDEA's transition planning and post-school goal provisions, arguing that the Districts' actions "have impeded Plaintiffs' right to this transition planning" because they "cannot identify post-school goals if they do not know how long they will be able to continue receiving the services that make those goals possible."  (Pl. Resp. in Opp. at 19 (pointing to Compl. ¶¶ 77–78, 83–84, 97, 102–03).)

    Assuming these claims suffice to demonstrate past illegal conduct, Plaintiffs still have not alleged injury-in-fact.  First, Plaintiffs' allegations do not offer "clear evidence" of any IDEA-related harm.  The *supersedeas* was in place before the current school year began.  Plaintiffs do not allege that the Districts failed to comply with the New Policy.  And they offer no facts explaining how the Districts' disagreement with the New Policy has actually impacted the Student-Plaintiffs' instruction, IEPs, etc., or the actual steps Plaintiffs have or have not taken because of the Districts' alleged conduct.  Second, for the Districts' alleged threats and prior attempts to terminate services to support any subjective or self-inflicted current and ongoing harm, Plaintiffs would need to show the Districts' allegedly unlawful planned course of conduct was imminently likely to be implemented.  This, as explained above, they cannot do.

13

fundamental problem: neither V.S. nor any of the other Plaintiffs can rely on the possibility of an adverse decision in *Mumin*.

The United States Supreme Court has long "been reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment." *See Clapper*, 568 U.S. at 413. The fact that an independent decisionmaker is in some manner related to the case need not pose an insurmountable hurdle. *See, e.g.*, *Dep't of Commerce v. New York*, 588 U.S. 752, 768 (2019) ("Respondents' theory of standing thus does not rest on mere speculation about the decisions of third parties; it relies instead on the predictable effect of Government action on the decisions of third parties."). But the Supreme Court has been particularly skeptical of basing injury on *litigation outcomes*: "It is just not possible for a litigant to prove in advance that the judicial system will lead to any particular result in his case." *Whitmore*, 495 U.S. at 159–60; *see also Clapper*, 568 U.S. at 413–14 (citing this statement in the context of decisions by the Foreign Intelligence Surveillance Court).

And here, the risk of harm to V.S. and the other Plaintiffs turns on the actions of the state supreme court. Specifically, the risk turns on that court deciding to affirm the Commonwealth Court's state-law holding *and* not deciding — or not deciding in Plaintiffs' favor — whether the IDEA requires Pennsylvania LEAs that receive federal funds to provide services to children with disabilities until their twenty-second birthday. Even if it the Court were permitted to surmise that the Pennsylvania Supreme Court is likely to affirm the unanimous *en banc* Commonwealth Court on the specific issues it decided, the Court cannot begin to guess whether, or how, that court

will address the IDEA interpretive question.[7]  Ultimately, despite the differences in

V.S.'s circumstances compared to the other Student-Plaintiffs, V.S.'s loss of a FAPE —

the future harm that she must show is clearly impending or substantially likely — is

also too speculative to support standing.[8]

2

The second element of standing requires a plaintiff to show that her injury is

"fairly traceable" to the defendant's conduct.  *Aichele*, 757 F.3d at 360 (cleaned up).

This causation requirement is not a high bar; concurrent causation does not defeat the

requirement, and even "an indirect causal relationship will suffice, so long as there is a

fairly traceable connection" to the defendant.  *Id.* at 366 (citation omitted).  Here,

---

[7]    The Commonwealth Court considered only questions of state administrative law and said nothing about the requirements of the IDEA.  *See Mumin*, 317 A.3d at 1106 n.39.  But the parties' briefing at the Pennsylvania Supreme Court offers competing views on whether 20 U.S.C. § 1412(a)(1) requires Pennsylvania LEAs to provide a FAPE to students with disabilities until their twenty-second birthday.  *See, e.g.*, Appellant's Br. at 22–25, 30–34, *Pa. Sch. Bds. Ass'n v. Mumin*, 39 MAP 2024 (Pa.); Appellees' Br. at 7–25, *Pa. Sch. Bds. Ass'n v. Mumin*, 39 MAP 2024 (Pa.).  Part of this dispute revolves around whether the New Policy is already required by 22 Pa. Code § 14.102(a) (incorporating the federal IDEA regulations), a question on which the state supreme court said it would hear oral argument.  (ECF No. 8-2.)

[8]    The specific circumstances in *Whitmore* — the case in which the Supreme Court expressed significant skepticism of predicting litigation results — required a particularly high degree of guesswork: the petitioner needed to obtain federal *habeas* relief and be convicted again upon retrial. 495 U.S. at 159–60.  Perhaps such extreme circumstances would permit a distinction here, where there is a unanimous, *en banc* decision by the lower court.  But *Clapper* made no such distinction, nor has any circuit court relied on one.  *See, e.g., Daker v. Carr*, No. 20-13067, 2022 WL 1398119, at *2 (11th Cir. May 3, 2022); *Tennille v. Western Union Co.*, 809 F.3d 555, 562 (10th Cir. 2015); *see also Doe v. Univ. of Michigan*, 78 F.4th 929, 944 (6th Cir. 2023) (applying this principle to a university disciplinary process).  Regardless, the possibility that the state supreme court will address the IDEA interpretation question that the Commonwealth Court did not answer means the Court would be engaged in mere guesswork.

To be clear, the possibility that the state supreme court interprets the IDEA provision at issue does not strip the federal courts of jurisdiction.  While the state court's specific holding could raise non-jurisdictional issue preclusion questions, or jurisdictional mootness issues, there is no jurisdictional bar to federal-court litigation of an issue pending before a state court.  *See, e.g., Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005) ("[P]endency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.") (citation omitted).

15

regardless of the relationship between Plaintiffs' alleged harm and the uncertainty caused by the fact that *Mumin* is still pending, the risk the Student-Plaintiffs face is ultimately due to the Districts' alleged actions and policies, without which the students would be assured of the continuance of a FAPE until their twenty-second birthdays. Plaintiffs have thus satisfied the traceability requirement.

3

The redressability element requires a plaintiff to show that her injury "will be 'redressed by a favorable decision.'" *Lutter v. JNESO*, 86 F.4th 111, 128 (3d Cir. 2023) (citation omitted). "[T]o redress an injury-in-fact, a declaratory judgment must provide conclusive resolution of a concrete controversy related to a prospective course of action by one of the adverse parties." *Id.* at 129.

Plaintiffs' allegations concerning "prospective course[s] of action" are not robust. B.J., J.J., C.B. and L.B. provide no hint as to what (if any) specific actions they are currently taking in the absence of relief or would be taking were relief granted. Nonetheless, at this stage, the Court can infer that the allegations concerning the difficulties involved in both preparing A.K. and V.S. for an abrupt transition and planning their next steps — which includes knowing when to implement alternative services — mean that these students and their parents have plans that will be affected by judgment in this case.[9]

---

[9]   Council Rock argues the Plaintiffs failed to state a claim because school districts cannot provide them relief absent "policy guidance from [the Department]," which, as the party responsible for supervising IDEA implementation and compliance in Pennsylvania, must be the party to provide relief.  (Def. Council Rock's Mot. to Dismiss at 20–21, ECF No. 6.)  These arguments are relevant to the traceability and redressability elements of the standing analysis.  *See, e.g.*, *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) ("[I]t is a bedrock principle that a federal court cannot redress 'injury that results from the independent action of some third party not before the court.'") (citation omitted); *see generally id.* at 58–74 (discussing the problem of third-party conduct with respect to traceability and redressability).

B

In evaluating whether declaratory judgment suits are ripe, courts apply a test

derived from *Step-Saver Data Systems, Inc. v. Wyse Technology*, 912 F.2d 643 (3d Cir.

1990), and examine three factors: "(1) the adversity of the parties' interests, (2) the

conclusiveness of the judgment, and (3) the utility of the judgment." *Plains All Am.*

*Pipeline L.P. v. Cook*, 866 F.3d 534, 540 (3d Cir. 2017) (citation omitted).[10]  Plaintiffs

must clearly allege facts demonstrating the Court's jurisdiction over a dispute. *See*

*Renne v. Geary*, 501 U.S. 312, 316 (1991); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S.

118, 127 (2007).  Because no plaintiff here can satisfy the first ripeness factor, the case

is not justiciable.[11]

1

The first factor — adversity of interests — examines the plaintiff's claim and

alleged harm.  "[W]here harm will result if the declaratory judgment is not entered,"

---

But Plaintiffs allege the Districts have policies that, if implemented, would violate the IDEA, and they are requesting *individual*, not statewide, relief.  SEAs are responsible for overseeing IDEA implementation and compliance, but that does not prevent IDEA beneficiaries from enforcing the law against LEAs.  *See* 20 U.S.C. § 1415(i)(2)(A) (providing a private right of action against LEAs). To obtain funding, LEAs must have policies "consistent with" SEA statewide policies, *id.* § 1413(a)(1), but they are not prohibited from going *beyond* those policies.  Nor can they evade responsibility under § 1415(i) for failing to comply with the IDEA by pointing to compliance with SEA policies.  Regardless of where the original error lies — with an SEA policy or an individual LEA's conduct — a court order directing an LEA to comply with the IDEA's requirements would redress its failure to do so.

[10]    The Third Circuit has explained that this test "differs in form" from the hardship-and-fitness test in *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967) but amounts to the same inquiry.  *Plains*, 866 F.3d at 540; *see also NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 342 n.9 (3d Cir. 2001).

[11]    Whether the *Step-Saver* test enumerates *factors* rather than *elements* is unclear.  *Compare Plains*, 866 F.3d at 540 (using the label "factors" and noting that additional factors are sometimes relevant) *with Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Engineers, Local Union No. 66*, 580 F.3d 185, 190–91 (3d Cir. 2009) ("If all three of these *requirements* are met, the claim is ripe.") (emphasis added).  Absent caselaw providing guidance on how to weigh these three issues relative to one another, the Court presumes all three are necessary for ripeness.

the parties' interests are adverse. *Plains*, 866 F.3d at 541 (citation omitted). In evaluating the plaintiff's harm, the Court asks "[w]hether the claim involves uncertain and contingent events, or presents a real and substantial threat of harm." *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 342 n.9 (3d Cir. 2001) (citation omitted). Although actions "based on a contingency" are unlikely to demonstrate sufficient adversity, a plaintiff "need not suffer a completed harm" to establish adversity because sometimes "present harms will flow from the threat of future actions." *Armstrong World Industries, Inc. v. Adams*, 961 F.2d 405, 412 (3d Cir. 1992). In that case, the plaintiff must show "that the probability of that future event is real and substantial, of sufficient immediacy and reality to warrant" a declaratory judgment. *Id.* (cleaned up)*; see also Trump v. New York*, 592 U.S. 125, 131 (2020) ("[T]he case must be 'ripe'—not dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'") (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).

The fact that realization of Plaintiffs' alleged harm (denial of a FAPE) rests on a contingency (the outcome of *Mumin*) is not, alone, fatal. And the Plaintiffs' argument that the Districts will, if possible, enforce the Old Policy in the future, *see, e.g.*, (Compl. ¶¶ 72, 90 (reproducing emails); *id.* ¶¶ 94–95 (discussing Central Bucks's application for relief)), weighs in their favor. *Cf. Surrick v. Killion*, 449 F.3d 520, 528 (3d Cir. 2006) (finding that the disciplinary office's refusal to tell the plaintiff he wouldn't be subject to penalties relevant to the adversity factor). But as discussed in Part III.A.1 above, the Plaintiffs cannot show that a decision in *Mumin* is imminent or that there is a

substantial probability that the decision will not favor them.  Without such a showing, they cannot demonstrate the requisite adversity of interest.[12]

2

The second ripeness factor — conclusiveness of the judgment — concerns "whether a declaratory judgment definitively would decide the parties' rights." *NE Hub*, 239 F.3d at 344.  It also concerns whether the decision would be aided by "further factual development" or if the issue presented is instead "predominantly legal." *NE Hub*, 239 F.3d at 344; *see also Plains*, 866 F.3d at 543.

Here, judgment would be "sufficiently conclusive to define and clarify the legal rights or relations of the parties." *Step-Saver*, 912 F.2d at 648.  Whether Plaintiffs are entitled to a FAPE until they turn twenty-two is a purely legal question requiring interpretation of federal and state law and no further factual development. *Cf. Armstrong*, 961 F.2d at 412 (noting the need for a "concrete set of facts" and "factual record" is less important for predominantly legal questions).  Regardless of the Pennsylvania Supreme Court's ultimate decision on the pending issues in *Mumin*, a judgment from this Court concerning whether federal law requires the Districts to provide the Student-Plaintiffs a FAPE until their twenty-second birthdays would conclusively determine the parties' legal rights and relationship. *Cf. NE Hub*, 239 F.3d at 344 (concluding the argument that the state regulatory process is preempted makes the process's possible outcome irrelevant for this factor); *Step-Saver*, 912 F.2d at 648

---

[12]     The Department's decision to invite comment on a proposed change to the Model Policy has no effect on the Article III justiciability analysis.  If the Plaintiffs could demonstrate injury-in-fact and adversity-of-interests absent that notice, the imminency of their harm would not be changed by the fact that the Department *invited comment* on a change it *could* make at *some point* in the future.

19

(finding a judgment would not be conclusive because the parties would nonetheless need to determine further legal issues).

3

The last ripeness factor — utility of the judgment — analyzes whether "the parties' plans of action are likely to be affected" by judgment and considers "the hardship to the parties of withholding judgment." *Plains*, 866 F.3d at 543 (quoting *NE Hub*, 239 F.3d at 344–45)*; Step-Saver*, 912 F.2d at 649. A case is not justiciable "unless the court is convinced that by its action a useful purpose will be served," and even where judgment "would clarify the parties' legal rights, it should ordinarily not be granted unless the parties' plans of action are likely to be affected" by the judgment. *Armstrong*, 961 F.2d at 412 (cleaned up). *Compare Plains*, 866 F.3d at 544 (finding plaintiff would take the same future steps regardless of whether judgment was granted), *with Surrick*, 449 F.3d at 529 (crediting the district court's findings that the plaintiff had been deterred by the threat of government action and noting that judgment would enable him to carry out his plans).

As discussed in Part III.A.3, the extent to which Plaintiffs' future conduct would be altered by judgment is unclear, and as indicated by the injury-in-fact analysis in Part III.A.1, the Court cannot conclude that any plaintiff would suffer hardship absent judgment. But again, at this stage, the Court can infer that A.K. and V.S.'s allegations mean that these students and their parents will alter their conduct as a result of judgment, *supra* Part III.A.3, thereby satisfying this factor. *Cf. Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1155–56 (3d Cir. 1995) (finding that "the record, at least implicitly, reflect[ed]" that the counterclaimant, having lost on her claim that family-

provided services were compensable, would hire a professional to provide those services instead if the court determined that was compensable).[13]

IV

The Districts also claim that the Court lacks subject-matter jurisdiction over Plaintiffs' claims under the *Rooker-Feldman* doctrine because of the Commonwealth Court's decision in *Mumin*.  The *Rooker-Feldman* doctrine prohibits district courts from exercising jurisdiction over a suit in which "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments."  *Great W. Mining & Mineral Co. v. Fox Rotshchild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (citing *Exxon Mobil*, 544 U.S. at 284).  The Districts' argument fails for at least three reasons.

First, Plaintiffs do not complain of injuries caused by *Mumin*.  The Plaintiffs' claimed injury is the possibility that the Districts will deny them a FAPE.  This injury is independent of the state-court decision, which held only that the New Policy was void *ab initio* and could not be enforced by the Department.  The state court did not decide what the IDEA's age-related provisions demand in light of state-law public education provisions, or require the Districts to follow either the Old Policy or the New Policy. The decision thus did not prevent or resolve Plaintiffs' alleged harm, but it also did not

---

[13]    This factor considers, to some extent, the utility of the judgment to defendants as well as plaintiffs.  *See, e.g.*, *Armstrong*, 961 F.2d at 423 ("[A] declaratory judgment would have no significant effect on either plaintiffs' or defendants' course of conduct."); *NE Hub*, 239 F.3d at 345 ("The Declaratory Judgments Act was enacted to clarify legal relationships so that plaintiffs (and possibly defendants) could make responsible decisions about the future.") (citation omitted).  But Plaintiffs' attempt to claim that "both parties' plans of action would be directly impacted," (Pl. Resp. in Opp. at 28) is unavailing here, as they have alleged no facts to support that statement, *see* (*id.*) (citing the Complaint for effects on the Plaintiffs, but not the Districts).

cause it. *Cf. Great W. Mining & Mineral Co.*, 615 F.3d at 167 (observing that a plaintiff who brought a federal-court employment-discrimination suit after losing a state-court suit on the same claims would be alleging harm from the employer's conduct rather than the state court's failure to rule in plaintiff's favor).

Second, Plaintiffs are not asking the Court to review and reject the Commonwealth Court's decision. They are asking the Court to determine a question about obligations under the IDEA, an issue the Commonwealth Court expressly avoided. *Mumin*, 317 A.3d at 1106 n.39 ("This Court does not decide whether the New Age-Out Plan is necessary for the Department to comply with the IDEA, just that the Department must promulgate the change in accordance with [state law].").

Finally, "*Rooker-Feldman* does not apply when state proceedings have neither ended nor led to orders reviewable by the United States Supreme Court." *Malhan v. Sec'y United States Dep't of State*, 938 F.3d 453, 460 (3d Cir. 2019). Because *Mumin* falls into neither category, *Rooker-Feldman* does not apply.

## V

Finally, the Districts argue that the Plaintiffs' failure to exhaust administrative remedies precludes the Court from exercising subject-matter jurisdiction. But because Plaintiffs fall within an exception to the exhaustion requirement, their failure to exhaust would not bar the Court from hearing their claims.

## A

The IDEA establishes an administrative process for addressing disputes about IDEA compliance. *T.R. v. Sch. Dist. of Philadelphia*, 4 F.4th 179, 184 (3d Cir. 2021).

Plaintiffs must follow this process before bringing suit in federal court.  *Id.* at 185.[14]
The IDEA's emphasis on individualized education services "also underlies its
exhaustion requirement," as the interactive nature of the administrative process makes
it more capable of addressing students' specific needs than the courts.  *Id.* at 191.

Nonetheless, a plaintiff's failure to exhaust the administrative process is excused
"where: (1) exhaustion would be futile or inadequate; (2) the issue presented is purely a
legal question; (3) the administrative agency cannot grant relief; [or] (4) exhaustion
would cause severe or irreparable harm."  *Id.* at 185 (citation omitted).  An additional
"systemic exception," which "flows implicitly from, or is in fact subsumed by," the first
and third exceptions, applies when plaintiffs "allege systemic legal deficiencies and,
correspondingly, request system-wide relief that cannot be provided (or even addressed)
through the administrative process."  *Id.* (citations omitted).

B

Exhaustion is required when "the peculiar expertise of an administrative
hearing officer is necessary to develop a factual record."  *Pardini v. Allegheny
Intermediate Unit*, 420 F.3d 181, 192 n.13 (3d Cir. 2005) (citation omitted).  However, if
"the factual record is fully-developed and no evidentiary disputes remain, the court can
and should decide legal issues."  *Id.*  (citation omitted).

This case concerns the interpretation of 20 U.S.C. § 1412(a)(1) and the effect of
Pennsylvania's adult education laws on the Districts' obligations under that provision.
Because this issue is a purely legal one that does not require a factual record developed

---

[14]    Although the Third Circuit has since cast doubt on its holding that IDEA exhaustion is a
*jurisdictional* requirement, it has not overturned that precedent.  *Wellman v. Butler Area Sch. Dist.*,
877 F.3d 125, 130 & n.6 (3d Cir. 2017).

by a hearing officer, Plaintiffs' failure to exhaust is excused.  *See id.* (finding

interpretation of the stay-put provision in § 1415(j) a purely legal issue excusing

exhaustion); *cf. Kristi H. ex rel. Virginia H. v. Tri-Valley Sch. Dist.*, 107 F. Supp. 2d 628,

633 (M.D. Pa. 2000) (finding exception not satisfied where granting relief would require

addressing first a pure legal question and then a factual one); *Old Bridge Bd. of Ed. v.*

*R.D. ex rel. D.D.*, No. 15-3886, 2015 WL 4464152, at *3–4 (D.N.J. July 21, 2015)

(same).[15]


      An appropriate Order follows.


                        BY THE COURT:


                        ***/s/ Gerald J. Pappert***
                        Gerald J. Pappert, J.

---

[15]     Plaintiffs also claim to fall within the systemic-deficiency exception, (Pl. Resp. in Opp. at 23–24), albeit without explaining how they satisfy *T.R. v. School District of Philadelphia*, 4 F.4th 179, 192–94 (3d Cir. 2021), the only reported Third Circuit opinion to provide an in-depth discussion of that exception.  But, because Plaintiffs satisfy the purely-legal exception, the Court need not address this issue.